Filed 7/8/24  In re Isabella G. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re ISABELLA G., a Person Coming Under the Juvenile Court Law. | B321917 (Los Angeles County Super. Ct. No. 18LJJP00277) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ARMANDO C.,<br><br>     Objector and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore. Appeal dismissed.

David M. Yorton, Jr., under appointment by the Court of Appeal, for Objector and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

The dependency proceedings below involve two children: Abraham C., who is the son of appellant Armando C. and his former girlfriend, Linda C. (Mother); and Isabella G., Abraham's older half sibling, who is the daughter of Mother and her former boyfriend Thomas G. When the dependency proceedings commenced in 2018, based on allegations of general neglect by Mother, Armando was in prison and would not be eligible for parole for around 10 years. Armando received notice of the dependency proceedings involving his son Abraham and expressed his desire to participate in the adjudication and disposition hearings by videoconference or telephone and to have counsel appointed to represent him. His participation at the hearings was not facilitated (apparently because of technological concerns), and the matter proceeded to the permanency planning stage without his appearance or representation by counsel.

In March 2022, Armando filed petitions under Welfare and Institutions Code[1] section 388 and *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477 (*Ansley*), arguing his due process rights were violated because the juvenile court did not secure his presence at the adjudication and disposition hearings and appoint counsel to represent him, despite his requests for same

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

made in advance of the hearings.  He requested, among other things, that the juvenile court vacate the section 366.26 permanency planning hearing and set a new adjudication and disposition hearing.  As to Isabella (Mother and Thomas's daughter) Armando asserted that the due process violations in his son Abraham's case prevented him from seeking presumed father status as to Isabella (with whom he had not had contact for more than five years since she was three years old).[2]  The court granted the petition in Abraham's case, and set the matter for a new disposition hearing (which was later held), and denied the petition in Isabella's case.  Armando filed this appeal, challenging the denial of his petition as to Isabella.[3]

Respondent Los Angeles County Department of Children and Family Services (DCFS) filed a motion to dismiss the present appeal arguing, among other things, that Armando lacks

---

[2] In this context, a presumed parent is one who "receives the child into their home and openly holds out the child as their natural child."  (Fam. Code, § 7611, subd. (d).)  A presumed parent may seek reunification services, custody, or visitation.  (*In re J.W.-P.* (2020) 54 Cal.App.5th 298, 301 (*J.W.-P.*).)

[3] In March 2023, while this appeal was pending, the juvenile court terminated Armando's and Mother's parental rights to Abraham, and Mother's and Thomas's parental rights to Isabella.  Armando appealed, challenging the order terminating his parental rights to Abraham based on asserted violations of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; (ICWA)) and California law implementing ICWA.  We rejected his challenge and affirmed the order terminating parental rights.  (*In re Armando C.* (Nov. 8, 2023, B328451) [nonpub. opn.].)  The order terminating parental rights is final.

3

standing to maintain this appeal because he is not a party to the proceedings involving Isabella. As explained below, we agree with DCFS's position, and dismiss this appeal.

## BACKGROUND

### I. The Participants in the Underlying Dependency Proceedings

In March 2018, Isabella (then, five years old) and Abraham (then, nearly two years old) came to the attention of DCFS based on a referral alleging general neglect by Mother.[4] During DCFS's investigation of the 2018 referral, Mother identified Thomas as Isabella's father and stated his whereabouts were unknown and he was not visiting Isabella. In or around 2013, in prior dependency proceedings involving Isabella, Thomas was deemed Isabella's presumed father.

Mother identified appellant Armando as Abraham's father and stated he was in prison (where he remained throughout these dependency proceedings). Less than a year after Abraham's birth, Father was arrested and incarcerated, and he was thereafter convicted of assault with a firearm and criminal threats, with a firearm enhancement. He was sentenced to 14 years in prison.[5] Mother was never married to Armando or Thomas, and the dates of her relationships with each are not clear from the record before us.

---

[4] The allegations against Mother are not germane to this appeal, so we do not discuss them herein.

[5] A "CDCR [California Department of Corrections and Rehabilitation] Inmate Locator" printout, attached to DCFS's May 1, 2018 Addendum Report, stated Armando's parole eligible date would be in June 2028.

4

Apparently DCFS contacted Armando in prison in March or April 2018 concerning the referral against Mother. On or around April 20, 2018, Armando wrote a letter to a DCFS social worker, acknowledging the open case involving his son Abraham and making a recommendation regarding placement. He did not reference Isabella by name in the letter (as he did Abraham), but he made multiple references to "my kids" and requested that they not be placed with any of Mother's relatives.

## II.    Detention and Adjudication/Disposition

Based on its investigation, on April 24, 2018, DCFS obtained a warrant authorizing removal of Isabella and Abraham from Mother, and placed both children in the same foster home. On May 1, 2018, DCFS filed a dependency petition concerning Isabella and Abraham, with allegations against Mother under section 300, subdivisions (b) and (j). At the detention hearing held the same day, the juvenile court deemed Thomas to be Isabella's presumed father and Armando to be Abraham's presumed father. The court made detention findings against the three parents, and the children remained placed in the same foster home. Armando did not appear at the detention hearing.

On May 17, 2018, the juvenile court issued a form JV-450 "Order for Prisoner's Appearance at Hearing Affecting Parental Rights" to secure Armando's presence at the adjudication/disposition hearing scheduled for July 9, 2018. The order referenced Abraham's case only (and not Isabella's), and stated the court could *not* accommodate the parent's appearance by videoconference or telephone in a manner that complies with the California Rules of Court.

On or around June 22, 2018, DCFS sent Armando notice of the adjudication and disposition hearings, which were scheduled

5

over two days, July 9 and July 26, 2018.  The notice listed both Abraham's and Isabella's names and case numbers.  In the Jurisdiction/Disposition Report, DCFS recommended no reunification services for Armando (with Abraham) under section 361.5 due to the length of his prison sentence and his conviction for a violent felony.

On July 2, 2018, Armando signed a form, waiving his right to appear at the July 9, 2018 adjudication/disposition hearing in Abraham's case.  Three days later, on July 5, 2018, he signed a form JV-451 "Prisoner's Statement Regarding Appearance at Hearing Affecting Parental Rights," indicating on the form that he wanted an attorney appointed to represent him at the July 9, 2018 hearing in Abraham's case, and that he wanted to participate in the hearing by videoconference or telephone but he did not want to be physically present in court.

We take the following facts from the above-referenced opinion in Armando's appeal from the order terminating his parental rights to Abraham, *In re Armando C., supra*, B328451, pages 4-5, because the record before us does not include some of the relevant documents:

"At the adjudication hearing on July 26, 2018, Mother pleaded no contest to an amended count under section 300, subdivision (b). . . .  The court set the matter for a disposition hearing.  [Armando] was not present at the adjudication hearing. . . .  For reasons not clear from the record, his participation at the hearing was not facilitated.

"In advance of the disposition hearing, [Armando] again signed forms requesting counsel, waiving his physical presence, and indicating he wanted to participate by videoconference or telephone.  This time, a prison official checked a box on the form

6

indicating the prison could not provide [Armando] 'with videoconference or telephonic technology that complies with' the California Rules of Court.

"At a hearing on January 23, 2019, the juvenile court sustained an additional count against Mother under section 300, subdivision (b) and proceeded with the disposition hearing. Mother was present and [Armando] was not (either physically or virtually). Nor was [Armando] represented by counsel. The court declared Abraham a dependent of the court, removed him from Mother and [Armando], and ordered him placed under DCFS's supervision. The court ordered reunification services and visitation for Mother, but not [Armando]. Twenty months later, on September 18, 2020, the juvenile court terminated Mother's reunification services and scheduled a section 366.26 permanency planning hearing for Abraham. [Armando] still had not appeared at a hearing in this matter.

"On December 20, 2021, at a continued section 366.26 hearing, an attorney made a special appearance on behalf of [Armando], but was not appointed to represent him. [Armando] participated virtually from his place of incarceration. The juvenile court noted this was [Armando]'s first appearance in these dependency proceedings. The court continued the matter at DCFS's request and ordered that the prison make Father available at the next hearing by video or telephone. . . ."

Isabella's case also proceeded to the permanency planning stage, with participation from Thomas, her presumed father.

### III. Armando's Section 388 Petitions

On March 11, 2022, Armando filed a petition concerning Abraham under section 388 and *Ansley*, *supra*, 185 Cal.App.3d 477, requesting, among other things, that the juvenile court

7

vacate the section 366.26 hearing and set a new adjudication and disposition hearing. He argued his due process rights were violated because the juvenile court did not secure his presence at the adjudication and disposition hearings and appoint counsel to represent him, despite his requests for same made in advance of the hearings. (*In re Armando C., supra*, B328451, pp. 5-6.)

Armando also filed a petition concerning Isabella under section 388 and *Ansley*. He argued that the above-described violations of his due process rights in Abraham's case "prevent[ed him] from seeking paternity as to [Isabella]." He requested the following relief: (1) take the section 366.26 hearing off calendar and set a new adjudication and disposition hearing in Isabella's case based on the due process violation in Abraham's case; and (2) place Isabella in his custody and/or order reunification services for him with Isabella. Quoting *Ansley*, Armando asserted he was not required to show that the change in order would be in Isabella's best interests: "[A] judgment that is proven void due to lack of due process notice suffers from a fatal jurisdictional defect. It may not be perpetuated on the rationale that setting it aside would not, in the court's view, be in the best interests of the child." (*Ansley, supra*, 185 Cal.App.3d at p. 490.)

Armando submitted the following exhibits in support of the section 388 petition in Isabella's case: the dependency petition; the Detention Report; the May 1, 2018 Addendum Report; the Jurisdiction/Disposition Report; the juvenile court's May 17, 2018 order for his appearance at the adjudication/disposition hearing in Abraham's case, his waiver of his right to appear, and his additional response on form JV-451; and the January 23, 2019 minute order from the continued adjudication/disposition hearing in Abraham's case. We summarized above the pertinent

8

information in these documents.  Armando also attached to the petition a statement he wrote on or about January 8, 2022, regarding the (unsuccessful) efforts he made to participate in these dependency proceedings.  He also explained in the statement that he was initially "willing to give [his] son up for adoption [be]cause [he] didn't want to separate him from his sister Isabella"; but now he believed he would be released from prison sooner than 2028 due to "positive programming," and he "want[ed] to continue to be a part of [his] kids['] lives."  He did not include any facts in the letter indicating he could establish he was Isabella's presumed father.

The juvenile court set the section 388 petitions for a hearing.  Armando was present via Webex at the May 3, 2022 hearing on his petitions, and he appeared through appointed counsel.  DCFS's counsel and counsel for Isabella and Abraham (hereafter, the children's counsel) agreed with Armando that Abraham's case should be set for a new disposition hearing.  The court accordingly granted Armando's petition in Abraham's case.

Counsel for Isabella's presumed father Thomas, the children's counsel, and DCFS's counsel objected to the juvenile court granting Armando any relief in Isabella's case.  Thomas's counsel noted Thomas signed Isabella's birth certificate; he was found to be her presumed father in prior dependency proceedings in 2013; Mother and Thomas listed Thomas as Isabella's father on their parentage questionnaires in the present dependency proceedings; and the juvenile court found Thomas to be Isabella's presumed father in the present dependency proceedings.  Thomas's counsel also asserted there was nothing in the record indicating Armando held Isabella out as his child.

9

The children's counsel agreed with Thomas's counsel that there was nothing in the record that would support a finding that Armando was Isabella's presumed father. The children's counsel also argued that the requested change in order was not in nine-year-old Isabella's best interest because, "She does not have a relationship with [Armando]. She does not recall any contact with him. She does not recognize him to be her father, and she only knows [Thomas] as her father. And she is currently thriving in her placement."

DCFS's counsel asserted there was no due process violation in Isabella's case because her presumed father Thomas received notice of the jurisdiction and disposition hearings, and Armando was not even entitled to notice as to Isabella because "there was no mention of [him] being [her] father." Counsel also noted Armando had not had contact with Isabella since his arrest and incarceration in 2016 (more than five years before), and there was no existing relationship between them that would warrant having two presumed fathers in her case.

Armando's counsel argued "alleged fathers" have a right to notice of dependency proceedings (but he did not state facts indicating Armando was as an alleged father of Isabella at the time of Isabella's adjudication and disposition hearings). Counsel explained Armando was *not* requesting that the juvenile court grant him presumed father status at this hearing. Rather, he was requesting that the court return the case to the disposition stage, so he would have an "opportunity to seek paternity" as to Isabella. Counsel suggested there might have been a time when Isabella lived in the same household as Armando, but counsel did not specify the timeframe or state facts indicating Armando could establish he was a presumed father to Isabella.

10

The juvenile court clarified Armando's position with counsel: "He wants to be given the opportunity to file a JV-505 [Statement Regarding Parentage] and have the court determine whether or not he is presumed?" Armando's counsel responded, "That and more, essentially. So basically everything. He wants to be given all the opportunities to contest all the issues as to disposition that he wasn't afforded due to the lack of legal counsel." The court made further inquiry: "But, in essence, he's asking -- if I understand, if he had counsel at the time, he would have made an argument with respect to being considered [Isabella]'s presumed father as well as [Thomas]; correct? Is that what you're saying?" Armando's counsel replied, "Yes, Your Honor. We wouldn't be filing this [section] 388 motion if that was essentially not the case because what would be the point? If [Armando] is not the presumed father, he essentially doesn't have a right to custody."

The juvenile court denied Armando's petition as to Isabella, stating Armando had made no showing "that at the time, when paternity was decided, there were facts that he had that he could have presented to the court to allow the court to consider him to be [Isabella]'s presumed father." The court continued: "But I actually do have the facts as they existed at that time, and they are that he had not had any contact with [Isabella] since 2016. And we were in 2018 at the time [of the adjudication/disposition hearing], so that would have been two years where he had had no contact with [Isabella] at all. So that's the first thing. He hasn't presented any new evidence to support the granting of the [section] 388 [petition] as to her."

The juvenile court also found a change in order was not in Isabella's best interests, stating, "And I do agree that case law is

11

clear and the statute[6] is clear that there is an opportunity to have two presumed fathers or two presumed parents when it is factually appropriate and in the child's best interests.  [¶]  This is not one of these cases.  [Armando] has had absolutely no contact with this child, and she is nine years old.  And if we go to 2016, then she was three years old at the time that he last had contact with her.  And, again, he has not established any ongoing contact, any type of relationship with her at all.  [¶]  And I also have to take into consideration the fact that she is nine years old, does not recognize him as her father, does not really recall him or have a relationship with him."

Armando filed a timely notice of appeal from the order denying his section 388 petition in Isabella's case.

## IV.  Relevant Juvenile Court Proceedings During Pendency of This Appeal

We take the following facts from our opinion in Armando's appeal from the order terminating his parental rights to Abraham:

"[Armando] was present via Webex at the August 31, 2022 disposition hearing for Abraham, and he was represented by counsel.  The juvenile court removed Abraham from [Armando], granted [Armando] virtual and telephonic visitation, and denied reunification services under section 361.5, subdivision (b)(12) (the parent has been convicted of a violent felony) and subdivision

---

[6] Family Code section 7612, subdivision (c) provides, in pertinent part, "In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child."

12

(e)(1) (services would be detrimental to the child due to the parent's incarceration). The court scheduled a section 366.26 permanency planning hearing for Abraham." (*In re Armando C.*, *supra*, B328451, p. 10.)

"On March 13, 2023, the juvenile court proceeded with the section 366.26 hearing. [Armando] was present via Webex from his place of incarceration, and he was represented by counsel. . . . The court terminated parental rights of the three parents, finding no exception applied, and selected adoption as the appropriate permanent plan for Abraham and Isabella, with the caregiver designated as the prospective adoptive parent. The court found by clear and convincing evidence that the children were adoptable." (*In re Armando C.*, *supra*, B328451, pp. 11-12.) As mentioned above, Armando appealed from the order terminating his parental rights to Abraham, contending that the juvenile court and DCFS failed to comply with ICWA and California law implementing ICWA. We affirmed the order terminating parental rights, which is now final. (*Id.* at pp. 2-3, 18.)

## DISCUSSION

In this appeal, Armando contends the order denying his section 388 petition as to Isabella must be reversed, and the matter must be remanded for a new adjudication/disposition hearing in Isabella's case, because of the due process violations in Abraham's case which resulted in his absence from the children's combined adjudication/disposition hearing. He argues he was deprived of the opportunity to seek presumed father status as to Isabella at the adjudication/disposition hearing.

DCFS filed a motion to dismiss this appeal, arguing (1) Armando lacks standing to maintain this appeal and (2) the appeal is moot because the juvenile court terminated parental

rights over Isabella at a hearing where Armando was present, and Armando did not challenge the order. We agree with DCFS's argument on standing, so we need not address the mootness argument.

"[O]nly parties of record may appeal." (*In re Joseph G.* (2000) 83 Cal.App.4th 712, 715.) To become a party of record, an alleged father in a dependency proceeding must "appear[] and assert[] a position" as to his parentage of the child. (*In re Emily R.* (2000) 80 Cal.App.4th 1344, 1356; see *In re Paul H.* (2003) 111 Cal.App.4th 753, 759 [alleged father had standing to appeal from the order terminating parental rights where he appeared in the matter, made efforts to obtain paternity testing, and provided an account of his interactions with the child's mother to support his claim that he was the child's biological father].)

Here, Armando appeared in Isabella's case, but he never asserted a position regarding his parentage as to her. Rather, he *expressly declined* to assert such a position at the section 388 hearing. He informed the court that he wanted an *opportunity* to assert that he was Isabella's presumed father (although she already had a presumed father), but he was not seeking presumed father status at that time.

Armando did not allege any facts in his section 388 petition indicating he is Isabella's presumed father. Nor did he submit to the juvenile court a form JV-505, Statement Regarding Parentage, which would have required the juvenile court to make a determination as to his parentage.[7] (See Cal. Rules of Court,

---

[7] We note there are no facts in the appellate record indicating Armando is Isabella's presumed father, and he makes

rule 5.635(h).)  Nothing prevented Armando from seeking presumed father status in Isabella's case, but he never did so in the year after the juvenile court denied his section 388 petition and before the court terminated parental rights over Isabella.

Armando put the cart before the horse.  He sought to return Isabella's case to the disposition stage, by citing due process violations in Abraham's case, without first attempting to establish he is a party to Isabella's case (by asserting a position as to parentage).[8]  He has no standing to maintain an appeal as to Isabella, and we dismiss this appeal.

## DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.          BENDIX, J.

---

no offer of proof in his appellate briefing indicating he is Isabella's presumed father.

[8] At the time of the combined adjudication/disposition hearings in Isabella's and Abraham's cases, there was nothing in the juvenile court record indicating Armando was an alleged father of Isabella, let alone a presumed father.  An alleged parent may *not* seek reunification services, custody, or visitation at a disposition hearing; only a presumed parent may do so.  (*J.W.-P.*, *supra*, 54 Cal.App.5th at p. 301.)